**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **T.M., A MINOR, BY AND** | ) | CASE NO.: |
| **THROUGH HIS GUARDIAN, A.R.** | ) | |
| c/o Edward L. Gilbert | ) | JUDGE: |
| Edward L. Gilbert Co., LPA | ) | |
| One Cascade Plaza, Suite 825 | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **A.R.** | ) | |
| c/o Edward L. Gilbert | ) | |
| Edward L. Gilbert Co., LPA | ) | |
| One Cascade Plaza, Suite 825 | ) | |
| Akron, Ohio 44308 | ) | |
| | ) | **COMPLAINT** |
| Plaintiffs, | ) | **(Jury Demand Endorsed Herein)** |
| | ) | |
| **CANTON CITY SCHOOL DISTRICT** | ) | |
| **BOARD OF EDUCATION** | ) | |
| c/o John M. Rinaldi, Board President | ) | |
| 305 McKinley Avenue N.W. | ) | |
| Canton, Ohio 44702 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **CANTON CITY SCHOOL DISTRICT** | ) | |
| c/o John M. Rinaldi, Board President | ) | |
| 305 McKinley Avenue N.W. | ) | |
| Canton, Ohio 44702 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **ADRIAN E. ALLISON** | ) | |
| (In His Official Capacity Only) | ) | |
| 305 McKinley Avenue N.W. | ) | |
| Canton, Ohio 44702 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |

1

**COREY D. GRUBBS**                                )
(In His Official Capacity Only)                    )
305 McKinley Avenue N.W.                            )
Canton, Ohio 44702                                 )
                                                   )
and                                                )
                                                   )
**KENNETH W. WEATHERBEE**                          )
(In His Official Capacity and Individual           )
Capacity)                                          )
Service:                                           )
305 McKinley Avenue N.W.                            )
Canton, Ohio 44702                                 )
and                                                )
1007 Lincoln Avenue                                )
Cuyahoga Falls, Ohio 44221                         )
                                                   )
                        Defendants.                )

## PRELIMINARY STATEMENT

1. Plaintiffs in this civil rights action are an African-American child ("T.M.") with a behavioral and learning disability attending school in the Canton City School District and his mother ("A.R.").

2. The Canton City School District and its employees unlawfully, injuriously, and punitively abused T.M., created a harassing, intimidating, and discriminatory environment, failed to notify proper authorities, and then intentionally and in bad faith attempted to cover up their unlawful conduct by failing to inform T.M.'s guardian.

3. While a student at McKinley High School ("McKinley"), a school within the Canton City School District ("Canton"), T.M. here, who is also a minor, was subjected to physical and/or emotional abuse at the hands of his teacher, Kenneth W. Weatherbee ("Weatherbee"), with such abuse either deliberately ignored or condoned by those responsible for supervision and oversight in the District.

2

4.  The violence and abuse had no relationship whatsoever to any legitimate educational or other objective but rather was nothing more than intentional painfully injurious conduct toward T.M. and his misled guardian. Weatherbee's conduct toward T.M., and the Defendants' acquiescence and cover-up, were inexcusable.

5.  Defendants' unlawful conduct identified in this Complaint was not in furtherance of efforts to control or discipline students or maintain order or control in the classroom. Instead, the injuries to T.M. were caused by the Defendants' conscious and flagrant indifference to Plaintiffs' rights.

6.  Plaintiffs bring this action to seek and obtain monetary compensatory and punitive damages, as well as injunctive relief, for the intentional violations of their rights under the United States Constitution, federal law and state law.

## <u>JURISDICTION AND VENUE</u>

7.  Jurisdiction is invoked pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C.§ 1331, §1343 and §1367 as one or more of the claims arise "under the Constitution, laws, or treaties of the United States."

8.  Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the claims within which this Honorable Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."

9.  Venue is conferred under 28 U.S.C. § 1391 (b) as a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Ohio.

10. All jurisdictional requirements have been met. Plaintiffs are not required to exhaust administrative remedies because the causes of action are discrimination-based. See *Fry v.*

*Napoleon Community Schools*,137 S.Ct. 743, 197 L.Ed.2d 46, 2017 WL 685533 (S.Ct. 2017).

## PARTIES

11. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

12. T.M. is a minor child who, at all relevant times herein, resided in Stark County, State of Ohio, and attended McKinley High School ("McKinley"), a school operated and maintained by the Canton City School District ("District").

13. A.R. is T.M.'s mother. During all relevant periods of time herein, she resided in Stark County, State of Ohio.

14. Defendant, the Canton City School District Board of Education ("Board") is the governing body of the Canton City School District and a political subdivision organized under the laws of the State of Ohio with its principal place of business located at 305 McKinley Avenue N.W. Canton, Ohio 44702. The Board is an entity operating under the laws of the State of Ohio and is authorized to sue and be sued as an entity for its acts and those of its agents and employees.

15. Defendant, the Canton City School District is a political subdivision organized under the laws of the State of Ohio with its principal place of business located at 305 McKinley Avenue N.W. Canton, Ohio 44702. At all relevant times herein, the District had authority over how T.M. was treated while he attended McKinley.

16. The District and Board have their primary place of business in Stark County, Ohio.

17. During all relevant periods of time herein, Adrian E. Allison ("Allison") was the superintendent of McKinley and, in such capacity, was responsible for the training and

supervision of the staff at McKinley, including Kenneth Weatherbee ("Weatherbee"), the teacher of T.M. Allison is being sued in his official capacity. Upon information and belief, Defendant Allison was a final policymaker for Canton with regard to directing and controlling Weatherbee's conduct, reporting his abuse to authorities, and covering up the behavior.

18. During all relevant periods of time herein, Corey D. Grubbs ("Grubbs") was the principal of McKinley and, in such capacity, was responsible for the training and supervision of the staff at McKinley, including Weatherbee, the teacher of T.M. Grubbs is being sued in his official capacity. Upon information and belief, Defendant Grubbs was a final policymaker for Canton with regard to directing and controlling Weatherbee's conduct, reporting his abuse to authorities, and covering up the behavior.

19. Kenneth W. Weatherbee, a White male, was, at all relevant times, T.M.'s high school teacher hired, trained, and supervised by the Board, the District, Allison, and Grubbs. Weatherbee is being sued in both his official and individual capacities.

20. All actions and omissions herein by all Defendants were done under the color of federal and state law.

## STATEMENT OF FACTS

21. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

22. T.M. is an African-American minor child.

23. A.R. is the African-American mother and guardian of T.M.

24. T.M. has an Individualized Education Program ("IEP"). An IEP is a written statement of the educational program designed to meet a child's individual needs. Every child who receives special education services must have an IEP.

25. T.M. has received special education services for several years in the Canton City School District.

26. From July 1, 2011 through approximately December 2017, Weatherbee was employed as a teacher at McKinley High School.

27. Weatherbee is licensed through the State of Ohio Department of Education as an Intervention Specialist – supplemental service teaching assignment (serves students with disability conditions only).

28. On May 28, 2015, Weatherbee entered into a Consent Agreement with the State of Ohio Department of Education due to a 2014 conviction in the Stow Municipal Court for one misdemeanor count of domestic violence. Weatherbee's license was suspended for sixty (60) days and was required to complete forty (40) hours of community service.

29. Despite Weatherbee's history of violent behavior, on information and belief, the Canton City School District did not have Weatherbee evaluated or tested for his unusual behavior.

30. T.M. was enrolled as a student for the 2017-2018 school year at McKinley High School, a school operated by the Board of Education of the Canton City School District.

31. T.M. was assigned to Weatherbee's classroom.

32. On or about December 4, 2017, T.M. was verbally arguing with another student in Weatherbee's classroom.

33. When the students continued to argue, Weatherbee called security.

6

34. School resource assistants ("SRAs"), Gary Witts ("Witts") and Michael Harrer ("Harrer"), simultaneously appeared in Weatherbee's classroom.

35. According to Weatherbee, it took 20 minutes for the SRAs to come to his classroom. However, according to Harrer, it took 0 to 15 minutes to arrive.

36. T.M. never refused to leave the classroom with the SRAs.

37. T.M. specifically stated "Don't touch me."

38. Although two SRAs were in his classroom, Weatherbee approached T.M. from behind and grabbed him on the arm.

39. Not seeing who was grabbing him, T.M. quickly spun around to face the individual.

40. Suddenly and abruptly, Weatherbee grabbed T.M. by the neck and body slammed him to the floor.

41. Weatherbee's technique was in violation of protocol in dealing with troubled youth.

42. Weatherbee then got on top of T.M. in an inappropriate manner and restrained him.

43. The SRAs just stood there doing nothing.

44. After Weatherbee got off of T.M., T.M. immediately got up off of the floor and peacefully left with the SRAs.

45. Assistant Principal, Chris Stone, later called A.R. and left a voicemail stating that Weatherbee "put his arm out" and T.M. was "pushing on the teacher" so the "teacher had to restrain him." Therefore, T.M. had to stay home the next day.

46. Weatherbee submitted a written statement, stating in part: "I put my arm between him and the student against his chest and was nudging him to move at which time he pushed me. I placed him in a supine restraint on the floor and the SRAs removed him from the class."

47. The incident was captured on video.

48. The verbal and written statements do not match the video footage.

49. Weatherbee failed to follow proper protocol in his infraction against T.M.

50. Defendants deliberately misrepresented the facts they provided to T.M.'s guardian.

51. Defendants acted maliciously and with deliberate indifference to the rights of T.M. and severely injured him.

52. On December 5, 2017, Weatherbee was placed on home assignment, without loss of pay or benefits, pending an investigation into "an incident of conduct unbecoming a professional which impacted student safety."

53. On December 8, 2017, Barb Maceyak, Director of Human Resources, gave Weatherbee notice of the following allegations against him: (1) Engaging in an act of physical aggression toward a student in your class which resulted in potential injury to the student; (2) Failing to appropriately monitor your students' classroom behavior and demonstrating inappropriate responses to your students' misbehavior; (3) Reacting in an aggressive manner that potentially threatened the safety and well-being of a student in your class; and (4) Failing to fulfill your professional responsibilities pursuant to the Board of Education's policies related to staff conduct.

54. On January 4, 2018, Weatherbee submitted a resignation letter to the District. His resignation was effective December 21, 2017.

## FIRST CAUSE OF ACTION
### Denial of 14th Amendment Right (Substantive Due Process)

55. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

56. Plaintiff brings this claim pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourteenth Amendment to the United States Constitution.

57. Plaintiff brings this claim against all Defendants.

58. Defendants are persons for purposes of 42 U.S.C. § 1983 liability.

59. Defendants are not entitled to qualified immunity as the Complaint states a constitutional right, which was clearly established at the time of Defendants' misconduct.

60. By their actions, as described herein, Defendants, as a part of a custom, policy and/or practice, subjected T.M. to the deprivation of the rights, privileges, or immunities secured by the Constitution and law. In particular, as a student in a public school, Plaintiff has a liberty interest in personal security and freedom from restraint and infliction of pain through a course of conduct that shocks the conscience.

61. The practices described above include, but are not limited to, Weatherbee forcibly body slamming and seizing T.M., an African-American student with disabilities, and restraining him on the floor without justification in accordance with District custom, policy and/or practice.

62. Defendants knew or reasonably should have known that body slamming and restraining T.M. would cause extreme physical and emotional harm to him and that it could cause continued and lasting harm to T.M. in the future.

63. The District, the Board, Allison, and Grubbs knowingly permitted, authorized, and sanctioned harm to T.M.

64. Defendants' actions and/or omissions, as described herein, were taken in accordance with the District and Board's custom and/or policy, or were ratified by the District and Board, such that the District and Board adopted such practices, customs, or policies.

65. The District, the Board, Allison, and Grubbs knew or reasonably should have known about the abusive practices with respect to T.M. The abusive and unconstitutional practices Defendants regularly undertook are so well settled as to constitute a custom or usage in the District. Yet, the District, Board, Allison, and Grubbs failed to take any affirmative actions to provide for the safety and well-being of African-American children with disabilities in Defendants' care, including T.M.

66. Defendants' actions, as described above, were objectively unreasonable, willful and wanton, and shocking to the conscience in light of the facts and circumstances surrounding the assault inflicted on T.M., an African-American child with disabilities, and entrusted to Defendants' care.

67. The conduct of the individual Defendants described herein violated clearly established rights of Plaintiffs of which reasonable people in the Defendants' position knew or should have known.

68. Defendants knew or should have known that the State of Ohio Department of Education policies and state law forbade the use of unreasonable and unnecessary force. Defendants nonetheless continued these customs, policies, and/or practices.

69. Defendants are the final policy-makers for purposes of 42 U.S.C. § 1983 liability.

70. T.M., like all United States citizens, has the substantive due process constitutional right to personal security and bodily integrity.

71. T.M. also has the substantive due process constitutional right to be free from arbitrary government conduct that lacks all socially redeeming value.

72. The relationship between T.M. and the Defendants was not voluntary. T.M. was required by law to attend the District's schools, in general, and Weatherbee's class, in particular.

73. Weatherbee had a significant period of time for deliberation to choose his conduct that is challenged in this case.

74. The force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

75. Defendants deprived T.M. of his constitutional right to substantive due process by engaging in arbitrary actions and omissions towards him that was of such an extreme nature as to shock the conscience. Weatherbee acted unlawfully and Allison and Grubbs acquiesced as supervisors and final policymakers for the District.

76. Defendants' conduct amounted to a tacit authorization of the abuse.

77. Defendants acted under color of law to deprive Plaintiffs of their protected property interests under the Due Process Clause.

78. None of the Defendants were pursuing any legitimate governmental purpose by verbally and physically intimidating, harassing, and abusing T.M.

79. As a direct and proximate result of the actions described above, Plaintiffs sustained actual damages, including injuries to T.M.'s person, pain, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness and anxiety as well as future damages.

80. **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, T.M.'s substantive due process rights, and A.R.'s fundamental right to make decisions concerning control over T.M.  Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of

11

$1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against Defendants Board and District, Defendant Weatherbee in his official and individual capacity, and against Defendants Allison and Grubbs in their official capacity.

<u>SECOND CAUSE OF ACTION</u><br>
<b>Denial of Fourth Amendment Right (Unreasonable Seizure)</b>

81. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

82. Plaintiff brings this claim pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth Amendment to the United States Constitution.

83. Plaintiff brings this claim against all Defendants.

84. Defendants are persons for purposes of 42 U.S.C. § 1983 liability.

85. Defendants are not entitled to qualified immunity as the Complaint states a constitutional right, which was clearly established at the time of Defendants' misconduct.

86. T.M. has a constitutionally protected right to be secure in his person and to maintain his bodily integrity against unreasonable seizure of his person.

87. Weatherbee, in physically seizing T.M., caused serious and long-term physical and psychological harm.

88. Physically restraining T.M. was an unreasonable and unlawful seizure of T.M. by Defendants acting under color of law.

89. Defendants knew or should have known that the State of Ohio Department of Education policies and state law forbade the use of unreasonable and unnecessary force and seizure. Defendants nonetheless continued these customs, policies, and/or practices.

90. Defendants are the final policy-makers for purposes of 42 U.S.C. § 1983 liability.

91. T.M., like all United States citizens, has a constitutional right to be free from unreasonable seizures.

92. Defendants deprived T.M. of his constitutional right to be free from unreasonable seizure when T.M. was body slammed, jumped on and restrained.

93. Weatherbee acted unlawfully and Allison and Grubbs acquiesced as supervisors and final policymakers for the District.

94. As a direct and proximate result of the violation of T.M.'s constitutional rights, T.M. has suffered damages.

95. **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, T.M.'s substantive due process rights, and A.R.'s fundamental right to make decisions concerning control over T.M.  Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against Defendants Board and District, Defendant Weatherbee in his official and individual capacity, and against Defendants Allison and Grubbs in their official capacity.

## THIRD CAUSE OF ACTION
### Denial of Plaintiffs' 14th Amendment Right (Equal Protection of the Law)

96. Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

97. T.M. and his guardian, like all United States citizens, have the right to equal protection of the laws.

98. Without any lawful basis, Defendants treated T.M. differently than they treated typically developing children and parents and guardians of typically developing children.

99. With regard to how Defendants abusively and with deliberate indifference treated T.M. as described in this Complaint, and how they refused to provide notice of that abusive treatment to T.M.'s guardian and attempted to cover-up, Defendants had no lawful basis whatsoever.

100. By their actions, as described herein, Defendants, under color of statute, ordinance, regulation, custom, or usage, subjected T.M. to the deprivation of the rights, privileges, or immunities secured by the Constitution and law.

101. Defendants discriminated against T.M., in whole or in part, because of his status as an African-American child with a disability, denying him equal protection under the law as required under the Fourteenth Amendment to the U.S. Constitution.

102. T.M. was assaulted based, in whole or in part, due to his race, African-American.

103. T.M. was assaulted based, in whole or in part, on his disabilities or manifestations of his disabilities.

104. Students without disabilities were not subjected to the abuses T.M. was subjected to, as described herein. This difference in treatment was due, in whole or part, to T.M.'s status as a student with disabilities.

14

105.     Non-minority students were not subjected to the abuses T.M. was subjected to, as described herein. This difference in treatment was due, in whole or part, to T.M.'s race, African-American.

106.     Body slamming and restraining techniques were not used to elicit desired behavior from non-disabled or non-minority students. This abusive and illegal treatment was reserved solely for children with disabilities and/or minorities.

107.     Defendants' decision to treat disabled students, including T.M., worse than the rest of the student population is unconstitutional.

108.     Defendants' decision to treat minority students, including T.M., worse than the rest of the student population is unconstitutional.

109.     There is no rational basis for the District's policy on restraining children with disabilities, including T.M. This policy shocks the conscience, and cannot be justified as relating to any rational basis.

110.     There is no rational basis for the District's policy on restraining minority children, including T.M. This policy shocks the conscience, and cannot be justified as relating to any rational basis.

111.     The acts or omissions of Defendants were conducted within the scope of their official duties and employment under color of law.

112.     Upon information and belief, Plaintiffs allege that the Defendants had a pattern and practice of treating disabled students and their families differently than typically developing children and their families.

113.    Upon information and belief, Plaintiffs allege that the Defendants had a pattern and practice of treating minority students and their families differently than non-minority children and their families.

114.    Defendants' intentional disparate treatment of Plaintiffs violated their right to equal protection of the laws.

115.    The actions of all Defendants, as described herein, intentionally deprived Plaintiffs of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused other damages in amounts to be ascertained at trial.

116.    **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, T.M.'s substantive due process rights, and A.R.'s fundamental right to make decisions concerning control over T.M. Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against Defendants Board and District, Defendant Weatherbee in his official and individual capacity, and against Defendants Allison and Grubbs in their official capacity.

## FOURTH CAUSE OF ACTION
### Supervisory Liability - Failure to Train and Supervise (42 U.S.C. § 1983)

117.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

118.    The Supervisory Defendants (Defendants Allison and Grubbs) each have duties to train and supervise teachers and other personnel in order to ensure the safety and well-being of students entrusted to their care and supervision.

119.    Each of the Supervisory Defendants failed to discharge these duties.

120.    The Supervisory Defendants acted intentionally in failing to adequately train and supervise teachers and other personnel.

121.    As a result, Defendants body slammed and restrained T.M. on the floor in direct violation of state law and the Ohio Department of Education regulations and in violation of T.M.'s constitutional rights.

122.    The assault has caused T.M. significant trauma.

123.    Had the Supervisory Defendants made any effort to properly train and supervise Weatherbee, T.M. would not likely have suffered this egregious and conscience-shocking abuse by Weatherbee, nor would T.M. have likely sustained the damages that he has sustained and will sustain in the future.

124.    The Supervisory Defendants' failure to properly train and supervise their subordinate employee was the moving force and proximate cause of the violation of T.M.'s constitutional rights as described herein.

125.    The acts and/or omissions of Defendants were conducted within the scope of their official duties and employment and under color of law.

126.    The acts and/or omissions of the Supervisory Defendants caused T.M.'s damages in that he suffered extreme physical and mental pain and the lasting damage that he will endure in the future.

127.    The actions of the Supervisory Defendants, as described herein, deprived T.M. of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other lasting damages.

128.    **WHEREFORE**, Plaintiffs demand injunctive relief against all Defendants in their official capacity for violation of 42 U.S.C. § 1983, T.M.'s substantive due process rights, and A.R.'s fundamental right to make decisions concerning control over T.M. Plaintiffs also request that this Court award Plaintiffs compensatory damages in the amount of $1,000,000.00, punitive damages in the amount of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, attorney fees, costs, and any other legal or equitable relief as this Honorable Court deems just and proper against Defendants Board and District, Defendant Weatherbee in his official and individual capacity, and against Defendants Allison and Grubbs in their official capacity.

### FIFTH CAUSE OF ACTION
### Violation of Section 504 of the Rehabilitation Act of 1973
### (29 U.S.C. §§ 794 et seq.)

129.    Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

130.    Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and the regulations promulgated thereunder, 34 C.F.R. Part 104, prohibit discrimination against persons with disabilities. T.M. has learning and behavioral disabilities as alleged previously and is a protected person under Section 504.

131.    Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving

18

federal financial assistance. Congressional authority to condition federal funding under this Act is derived from the enumerated powers contained in Article 1, Section 8 of the U.S. Constitution.

132.     The District is a recipient of federal financial assistance.

133.     The practices described above, including but not limited to, body slamming and restraining T.M. on the floor, were discriminatory and denied T.M. the benefits of participation in a public school education.

134.     Students without disabilities were not subjected to the abuses T.M. was subjected to, as described herein. This difference in treatment was due, in whole or part, to T.M.'s status as a student with disabilities. Body slamming and restraining techniques were not used to elicit desired behavior from non-disabled students. This abusive and illegal treatment was reserved solely for T.M., a child with disabilities.

135.     Defendants have violated T.M.'s rights under Section 504 and the regulations promulgated thereunder by denying T.M. the benefits of receiving full and equal access to the public education programs and activities offered within the District.

136.     Defendants' practices were intentionally discriminatory and were taken with deliberate indifference to the strong likelihood that the practices would result in a violation of T.M.'s federally protected rights.

137.     As a direct and proximate result of Defendants' violation of Section 504, T.M. has suffered, continues to suffer, and will suffer in the future injuries to his person including, but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress, and damage to his personal relations in amounts to be ascertained according to proof at trial.

138.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay, attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and equitable against the Board, the District, and the individual Defendants in their official capacity only.

**SIXTH CAUSE OF ACTION**
**Violation of The Americans With Disabilities Act ("ADA")**
**(42 U.S.C. §§12131 et seq.)**

139.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

140.     Title II of the ADA, 42 U.S.C. §12131 et seq. and the regulations thereunder, 28 C.F.R. Part 35, governing state and local governmental entities, protects persons from discrimination on the basis of disability by public entities. T.M. has learning and behavioral disabilities as alleged previously and is a protected person under the ADA.

141.     The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

142.     The discriminatory practices described herein excluded T.M. from participating in and receiving the benefits of a public school education.

143.     Defendants' practices were intentionally discriminatory and exhibited a deliberate indifference to the strong likelihood that the pursuit of these practices would result in a violation of T.M.'s federally protected rights.

144.     Defendants violated T.M.'s rights under the ADA and the regulations

promulgated thereunder, denying T.M. the benefits of the services, programs, and

activities to which he was otherwise entitled from the District. T.M. was mistreated in

violation of law as a direct result of his disabilities, and the manifestation of these

disabilities.

145.     Students without disabilities were not subjected to the abuses T.M. was subjected

to, as described herein. This difference in treatment was due, in whole or part, to T.M.'s

status as a student with disabilities. Body slamming and restraining techniques were not

used to elicit desired behavior from non-disabled students. This abusive and illegal

treatment was reserved solely for T.M., a child with disabilities.

146.     As a direct and proximate result of Defendants' violation of the ADA, T.M. has

suffered and continues to suffer injuries to his person, including, but not limited to, pain,

humiliation, anxiety, mental anguish, emotional distress and damage to his personal

relations in amounts to be ascertained according to proof at trial.

147.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00,

punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay,

attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and

equitable against the Board, the District, and the individual Defendants in their official

capacity only.

## SEVENTH CAUSE OF ACTION
### (Violation of Title VI of the Civil Rights Act of 1964)

148.     Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

21

149.    Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Defendants receive Federal financial assistance and are subject to Title VI requirements.

150.    T.M. is African-American; therefore, he is in a protected class.

151.    T.M. has a protected right to be free from race-based discrimination and harassment under Title VI of the Civil Rights Act of 1964.

152.    T.M. was subjected to intentional discrimination, harassment, and assault from Weatherbee due to his race.

153.    This race-based harassment/assault created a hostile educational environment.

154.    The District and Board had actual notice that Weatherbee's harassment/assault of T.M. was based on race.

155.    As a direct and proximate cause of the hostile educational environment that was allowed to flourish due to Defendants' deliberate indifference, T.M. experienced such severe, pervasive, and/or objectively offensive race-based harassment that he was deprived of equal access to educational benefits or opportunities provided by the District.

156.    As a result of the District and Board's failure to comply with its duty under § 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., and its implementing regulations, T.M. has suffered damages including special and general damages according to proof.

157.    **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay, attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and equitable against the Board, the District, and the individual Defendants in their official capacity only.

## EIGHTH CAUSE OF ACTION
### Assault

158.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

159.     Weatherbee acted with the intent to create a state of fear or danger of harm or offensive contact with T.M.

160.     T.M. had a reasonable belief that he would be subject to harm or offensive contact by Weatherbee.

161.     T.M. experienced fear of such harm or offensive contact in response to Weatherbee's conduct.

162.     Weatherbee's conduct towards T.M. was harmful and offensive.

163.     As a direct and proximate cause of the foregoing actions by Weatherbee towards T.M., he has suffered damages.

164.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay, attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## NINTH CAUSE OF ACTION
### Battery

165.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

166.     Upon information and belief, in his actions towards T.M., Weatherbee engaged in the intentional touching of or application of force to his body and did so in a harmful or offensive manner, and without consent.

167.     As a direct and proximate cause of the foregoing actions of Weatherbee towards T.M., he has suffered damages.

168.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay, attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## TENTH CAUSE OF ACTION
### Negligence *Per Se* - Ohio Revised Code § 3319.41

169.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

170.     Ohio Revised Code § 3319.41 specifically mandates that persons employed or engaged as teachers, principals, or administrators in a public or private school may, within the scope of their employment, use and apply such amount of force and restraint as is reasonable and necessary to quell a disturbance threatening physical injury to others for the purpose of self-defense, or for the protection of persons or property.

171.     T.M. experienced physical pain, trauma and significant emotional distress when
Weatherbee physically assaulted him by body slamming him to the floor. Thereafter, as a
result of the assault, T.M. suffered and continues to suffer emotional distress.

172.     Defendants had a duty to protect T.M. from such unreasonable force as prohibited
by Ohio law.

173.     Said actions are a violation of Ohio Revised Code § 2903.13 (assault) for which
there is civil liability pursuant to Ohio Revised Code §2307.60.

174.     As a direct consequence of these actions, T.M. has suffered and continues to
suffer mental anguish, embarrassment, humiliation, pain and suffering, for which he is
entitled to compensatory damages and attorney's fees.

175.     The Defendants' intentional and reckless violation of R.C. § 3319.41 constitutes
negligence *per se*.

176.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00,
punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering,
inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay,
attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and
equitable against all Defendants.

<u>**ELEVENTH CAUSE OF ACTION**</u>
**Negligence *Per Se* - Ohio Revised Code § 2919.22**

177.     Plaintiffs reincorporate by reference the allegations set forth above as if fully
rewritten herein.

178.     Ohio Revised Code § 2919.22 specifically mandates that no person having
custody or control of a child under 18 years of age shall create a substantial risk to the
health or safety of the child, by violating a duty of care, protection, or support. R.C. §

25

2919.22 further mandates that no person shall abuse such child; torture or cruelly abuse such child; or administer corporal punishment or other physical disciplinary measure, or physically restrain such child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child.

179.     Defendants, by virtue of their relationship with T.M., had custody and control of T.M. during school hours.

180.     Defendants' actions taken against T.M. were in direct violation of R.C. § 2919.22.

181.     T.M. experienced physical pain, trauma and significant emotional distress as a result of the assault.

182.     Defendants had a duty to protect T.M. from assault as prohibited by Ohio law.

183.     Said actions are a violation of Ohio Revised Code § 2903.13 (assault) for which there is civil liability pursuant to Ohio Revised Code §2307.60.

184.     The Defendants' intentional and reckless violation of R.C. § 2151.421 constitutes negligence *per se*.

185.     As a direct consequence of these actions, T.M. has suffered and continues to suffer mental anguish, embarrassment, humiliation, pain and suffering, for which he is entitled to compensatory damages and attorney's fees.

186.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay, attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## TWELFTH CAUSE OF ACTION
### Negligence *Per Se* - Ohio Revised Code § 2151.421

187.     Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

188.     Ohio Revised Code § 2151.421 specifically mandates that Defendants were to

report Weatherbee's conduct to the appropriate authorities.

189.     Defendants intentionally and recklessly failed to timely report Weatherbee's

conduct to the appropriate authorities.

190.     R.C. 2151.421 imposed that specific and mandatory reporting duty on the

Defendants for the safety and protection of T.M.

191.     Defendants intentionally and recklessly failed to comply with the mandates of

R.C. 2151.421.

192.     As a direct and proximate cause of the Defendants' intentional and reckless

violation of R.C. 2151.421, the Plaintiff children have suffered the type of injuries the

statute was designed to protect against.

193.     The Defendants' violation of R.C. 2151.421 is a misdemeanor of the first degree.

194.     The Defendants' intentional and reckless violation of R.C. § 2151.421 constitutes

negligence *per se*.

195.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00,

punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay,

attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and

equitable against all Defendants.

## THIRTEENTH CAUSE OF ACTION
### Negligent Hiring/Training/Supervision under Ohio Law

196.     Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

197.     The Supervisory Defendants (Defendants Allison and Grubbs) each have duties to

hire, train and supervise teachers and other personnel in order to ensure the safety and

well-being of students entrusted to their care and supervision.

198.     Each of the Supervisory Defendants failed to discharge these duties.

199.     Weatherbee did not have the requisite qualifications when he was hired.

200.     Weatherbee's contract was renewed even after he was convicted of domestic

violence.

201.     The Supervisory Defendants acted intentionally in failing to adequately train and

supervise teachers and other personnel.

202.     As a result, Defendants body slammed and restrained T.M. on the floor in direct

violation of state law and the Ohio Department of Education regulations and in violation

of T.M.'s constitutional rights.

203.     The assault has caused T.M. significant trauma.

204.     Had the Supervisory Defendants made any effort to properly train and supervise

Weatherbee, T.M. would not likely have suffered this egregious and conscience-shocking

abuse by Weatherbee, nor would T.M. have likely sustained the damages that he has

sustained and will sustain in the future.

205.     The Supervisory Defendants' failure to properly train and supervise their

subordinate employee was the moving force and proximate cause of the violation of

T.M.'s constitutional rights as described herein.

206.     The acts and/or omissions of Defendants were conducted within the scope of their

official duties and employment and under color of law.

207.     The acts and/or omissions of the Supervisory Defendants caused T.M.'s damages

in that he suffered extreme physical and mental pain and the lasting damage that he will

endure in the future.

208.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00,

punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay,

attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and

equitable against the District, the Board, Allison, and Grubbs.

## FOURTEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

209.     Plaintiffs reincorporate by reference the allegations set forth above as if fully

rewritten herein.

210.     The foregoing actions of Weatherbee towards T.M. were outrageous in character

and so extreme in degree, as to go beyond all possible bounds of decency, and are

regarded as atrocious and utterly intolerable in a civilized community.

211.     The foregoing actions of Weatherbee towards T.M. were intentional or reckless.

212.     Weatherbee intended to cause T.M. severe emotional distress and/or acted with

reckless disregard as to the risk that his actions would cause T.M. severe emotional

distress.

213.     The foregoing actions and omissions of Weatherbee towards T.M. were extreme

and outrageous.

214.     The foregoing actions of Weatherbee towards T.M. caused T.M. to suffer severe emotional distress beyond that which a reasonable person should be expected to endure.

215.     As a direct and proximate cause of the foregoing actions of Weatherbee towards T.M., he has suffered damages.

216.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay, attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and equitable against Weatherbee in his individual capacity.

**FIFTEENTH CAUSE OF ACTION**
**Loss of Consortium**

217.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

218.     As a direct and proximate result of the conduct of Weatherbee, A.R., as the parent and guardian of T.M. has been damaged due to the deprivation of the services, society, companionship, comfort, love, solace and affection of T.M. and is entitled to recover for her loss of consortium in an amount to be determined at trial.

219.     **WHEREFORE**, Plaintiffs demand compensatory damages of $1,000,000.00, punitive damages of $500,000.00, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, back pay, front pay, attorneys' fees, reinstatement, costs, and any other relief this Court may deem is fair and equitable against all Defendants.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,

**EDWARD L. GILBERT CO., L.P.A.**

 /s/   Edward L. Gilbert
Edward L. Gilbert (0014544)
One Cascade Plaza, Suite 825
Akron, OH 44308
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com